## P. J. White, Plff. in Err., *v.* School District of Archbald Borough.

Where one board of school directors, duly elected and qualified, is acting as such and performing the duties of the office, another *de facto* board cannot exist.

Contracts made with a pretended *de facto* board do not bind the school district.

(Argued February —, 1887. Decided March 7, 1887.)

January Term, 1887, No. 76, E. D. Error to the Common Pleas of Lackawanna County to review a judgment on a verdict for the defendant in an action of assumpsit. Affirmed.

Proceedings involving the rights of this school board were before this court in Gilroy's Appeal, 100 Pa. 5; Gilroy v. Com. 105 Pa. 484, and Gilroy v. Jones, No. 197, July term, 1882, 4 Law Times N. S. 121.

The facts, as they appeared at the trial before HAND, P. J., were stated in his charge to the jury, which was as follows:

Under the view that is pressed upon the court, by the counsel for the defendant, the court feels that the responsibility of this case is with them. We would be very glad to relieve ourselves of it, but it is one of those duties which is incumbent upon the court; and we will have to dispose of the case, therefore, in a formal charge, and direct a verdict for the defendant.

In order that our views may be understood (and so if any

NOTE.—There cannot be a *de facto* officer, where one *de jure* is performing the duties. The cases upon this question will be found collected in the opinion of the court in Re Gunn, 19 L. R. A. 519, 533.

wrong is done to the plaintiff he may have that corrected) we will briefly state our views of the case.

The action of this case is founded upon a claim, that the board of school directors of the borough of Archbald, called the Gilroy board, was a *de facto* board; and as such their acts were binding, so far as regards this plaintiff, to such an extent as to hold the district responsible for his services as a school teacher in that district.

The case involves a decision on the part of this court, under the undisputed evidence of the case, of the question as to whether, as between the Miller board and the Gilroy board, the Gilroy board was a *de facto* board. The evidence in this case, so far as it affects it, down to June, 1881, is the same as was adduced in the case of the *quo warranto,* and we therefore reach, under the evidence, the conclusion the same as we did there, that in June, 1881, the board called the Miller board was the *de jure* board, the only lawful board in existence. This board, under the undisputed evidence in the case, organized in June, 1881, and, as an organization, was lawful. This organization in the successive years, down and through the year 1883 and 1884 under the evidence in this case, was a *de jure* board, the individual officers changing from time to time, either by the expiration of their term or by resignation, but not to such an extent as to destroy the character of the board as an organization as a lawful board.

It is possible that, upon a technical examination, one or more members of the board, individually, might not be found qualified to hold the office, but, as a board, and as an organization, its *de jure* character remained intact down to and throughout the year 1883.

If we are right in this view, the only other question of law and fact is, Did this board from 1881, down to 1883, act in its organized capacity, as a board of school directors for the borough of Archbald? Under the undisputed evidence in this case, we feel compelled to reach the conclusion that it did. The character of the evidence is such that it does not rest upon the credibility of witnesses; but it is of the same character as that testimony which was adduced in the *quo warranto* case, upon which we decided the same fact; hence, it follows that the question of a rival board, beginning in 1881, unlawfully, and continuing down to the year 1883, being a *de facto* board does not arise in the

case; and consequently, inasmuch as the plaintiff holds his office and founds his claim upon the acts of this board, he cannot recover.

We are asked to charge you upon several points. We will read them and answer them in order to preserve the rights of the parties.

[The court first answers the defendant's points, and then the plaintiff's which were, *inter alia,* these:]

6. "If the men who employed the plaintiff were *de facto* officers, and the jury believe the evidence of the employment contract and services of White for the time he was employed, their verdict should be for the plaintiff for $675, with interest from the first day of June, 1884."

*Ans.* Under the facts in this case we answer this in the negative.

7. "The act of 1883, upon which the order of court for the election in 1883 was made, is unconstitutional; and those holding under ward elections for 1883–4, to wit: the 'Miller board,' were not legal directors."

*Ans.* It is not necessary for us to decide, in this case, whether the act of 1883 is constitutional or not. We therefore decline to charge as requested.

8. "The voters of the school district of the borough of Archbald could not legally vote by wards for school directors in 1883. The provisions of the acts of assembly relating to the election of school directors by wards were not complied with in the proceedings purporting to establish ward elections for school directors in that borough."

*Ans.* It is not necessary for us to decide this question in this case; and therefore we decline to affirm this point.

Under this view of the court, you will render a verdict for the defendant.

Verdict and judgment accordingly.

The assignments of error specified the answers to the points quoted, the direction to find for the defendant, and the ruling that the organization of the Miller board in 1882 was legal, and they were the *de jure* board.

*S. B. Price* and *James W. Oakford,* for plaintiff in error.— An officer *de facto* seems to be a person who is such by color of

election, although ineligible, or although the office was not vacant.   M'Gargell v. Hazleton Coal Co. 4 Watts & S. 424.

Lord ELLENBOROUGH defines an officer *de facto* as one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law.

When a person holds an office by color of right he is an officer *de facto*.   Dill. Mun. Corp. §§ 114, 716, pp. 243, 676.

As a general rule it may be stated that not only when the corporate power resides in a select body as a city council, but where it has been delegated to a committee or to agents, then, in the absence of special provisions otherwise, a minority of the select body, or of the committee or agents, are powerless to bind the majority or do any valid act.   Dill. Mun. Corp. § 221, p. 247.

The doctrine of the court below in this case appears to be that when there is a contest over municipal officers the public must deal with the *de jure* officers or their contracts are void.

If this is the law, then whenever there is a contest over municipal office the business of the corporation must stop until a decision is reached.

As to the attempt to enjoin the Gilroy board, see Gilroy's Appeal, 100 Pa. 5.

The act of February 16, 1883, purports to be general.   But is it not special and within the prohibition of article 3, § 7, of the Constitution?   It provided for a change in the number and mode of election of school directors in a certain class of boroughs, that is, those that had been divided into wards.

The act of 1874 provided for the division of boroughs into wards; the supplement of 1876 provided that the court decreeing the division might upon certain conditions increase the number of councilmen and school directors so that each ward should have an equal number.   The act of 1883 provides that from and after such division into wards or when any such division has heretofore been made each ward shall elect not less than one nor more than three school directors.

Probably the only borough upon which this act became operative at once was the borough of Archbald, for it had been divided into wards.   In all other cases it was necessary to obtain a division under the provisions of the act of 1874, before a change in the number of and mode of voting for school directors could be made.   All our recent decisions are to the effect that if local results either are or may be produced by a piece of legis-

·lation it offends against this provision of the Constitution (art. 3, § 7) and is void. Scranton School Dist.'s Appeal, 113 Pa. 176, 6 Atl. 158; Com. *ex rel.* Fertig v. Patton, 88 Pa. 258; Scowden's Appeal, 96 Pa. 422; Davis v. Clark, 15 W. N. C. 209; McCarthy v. Com. 110 Pa. 243, 2 Atl. 423; Scranton v. Silkman, 113 Pa. 196, 6 Atl. 146; Com. v. Halstead, 3 Sad. Rep. 186.

The contracts of school directors, although not properly recorded, if performed by the party dealing with them, can be enforced. School Directors v. McBride, 22 Pa. 216; Genesee Twp. v. McDonald, 98 Pa. 444.

In actions against public officers it is sufficient to prove that they acted as such. Neale v. Overseers, 5 Watts, 538; Barnet v. School Directors, 6 Watts & S. 46; Riddle v. Bedford County, 7 Serg. & R. 392.

A certificate of an election is prima facie evidence of title to an office. Dill. Mun. Corp. § 716, p. 667; Campbell v. Com. 96 Pa. 344; Clark v. Com. 29 Pa. 129.

The acts of public officers *de facto* are valid, so far as the public or third persons are interested therein. Keyser v. M'Kissan, 2 Rawle, 139; Thompson v. Ewing, 1 Brewst. (Pa.) 67; Neale v. Overseers, 5 Watts, 538.

The claim of the plaintiff is based upon a contract with persons who were acting as school directors, and who were apparently authorized by election to make agreements for the municipality. He carried out his agreement in good faith; the district had the benefit of his services, and he insists upon his right to recover the amount due upon his contract.

*W. G. Ward, George S. Horn,* and *Alexander Farnham,* for defendant in error.—The rule is that where there is evidence which alone would justify an inference of the disputed fact, it must go to the jury, no matter how strong or persuasive may be the countervailing proof. A court may set aside a verdict as against the weight of the evidence, but that is the most they can do to assist the party. But in a case in which a court ought to say that there is no evidence sufficient to authorize the inference, then the verdict would be without evidence, not contrary to the weight of it. Whenever this is so they have the right, and it is their duty, to withhold it from the jury.

But where the weight on one side is of such a character as not

to incline the beam at all—what the civilians term a mere *adminiculum;* good to help something else—nothing but a conjecture—then it is as much a question for the court as if this scintilla was absent. Howard Exp. Co. v. Wile, 64 Pa. 205; Battles v. Laudenslager, 84 Pa. 452.

When the evidence is not in conflict upon the question of fact in dispute, the plaintiff's points may assume the facts to be in accordance with the evidence. Wannamaker v. Burke, 111 Pa. 430, 2 Atl. 500; Hoag v. Lake Shore & M. S. R. Co. 85 Pa. 298, 27 Am. Rep. 653.

When a fact essential to the maintenance of a cause is not established by proof, the judge may order a nonsuit, or direct a verdict for defendant; and when the requisite facts are agreed upon or admitted, he may instruct a finding for plaintiff. Lehigh Valley R. Co. v. McKeen, 90 Pa. 127, 35 Am. Rep. 644.

In the case now before the court the evidence on part of the plaintiff wholly failed to establish any of the essential facts requisite to maintain the action.

All the evidence on part of the plaintiff fails to show that the Gilroy board was a *de jure* board of school directors of the district; but it does show that there were two boards acting as and each claiming to be a *de jure* board of school directors for the district. Certainly they both were not *de jure* boards.

If both boards were usurpers, each acting under its own illegal and belligerent claim, neither of them was such a *de facto* board as had power to bind the district by contract with third parties. If the one could, then the other could; and if these two could, any indefinite number of usurping boards could do so, which would be such an intolerable and unjust condition as to be ruinous to the district, and which no court should uphold. Genesee Twp. v. McDonald, 98 Pa. 448.

A person cannot be a *de facto* officer unless there be an office to be filled; nor when the office exists with an incumbent exercising the franchises and discharging the duties incident to the office. It matters not whether such incumbent be a *de facto* or a *de jure* officer. Com. *ex rel.* Chase v. Harding, 87 Pa. 353; Genesee Twp. v. McDonald, 98 Pa. 449.

The constitutionality of the act of 1883 could not affect the case.

The mode prescribed by the statute for the employment of

teachers for the public schools must be strictly complied with. School District v. Padden, 89 Pa. 395.

The mode prescribed by the statute is that no teacher shall be appointed, except by the affirmative votes of the whole number of the directors or controllers of the district; and in each case the names of the members voting, both in the affirmative and the negative, shall be so entered in the minutes of the board by the secretary; and immediately after the annual appointment of teachers in each district, the secretary of the board shall send a written list of the names, and the schools to which they have been respectively appointed, to the proper county superintendent, with a notice of the day upon which the ensuing term of school in the district will commence, and the termination thereof as directed by the board. Purdon's Digest, p. 289, pl. 37.

The directors shall have the appointment of all the teachers of common schools in the district, fix the amount of their salaries, dismiss them, etc. Purdon's Digest, p. 290, pl. 51.

The plaintiff was not employed by the Miller board; he held it at arm's length and refused to recognize its authority or legality.

In Kerr v. Trego, 47 Pa. 296, Chief Justice Lowrie says: "On the division of a body that ought to be a unit the test of which represents the legitimate social succession is, Which of them has maintained the regular forms of organization according to the laws and usages of the body, or, in the absence of these, according to the laws, customs, and usages of similar bodies in like cases, or in analogy to them.

"This is the uniform rule in such cases. . . . In all cases where part of the public body remains and is to be completed by the reception of new members, it remains as an organized nucleus, and in its organized form it receives the new members and then proceeds to the election of new officers, if any are then to be elected. The old nucleus is not dissolved by the incoming elements, but these are added to it, and then the whole body proceeds to the exercise of all its functions."

PER CURIAM:

There was no error in the court holding the "Miller board" to be the duly elected and qualified board of directors. It was acting as such and performing the duties of the office. Any other *de facto* board could not bind the school district. It fol-

lows that the plaintiff cannot compel the district to fulfil a contract made with the pretended board. When the plaintiff made a contract with it, he ran the risk of its being declared to be invalid.

Judgment affirmed.